**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GIOVANI DEPIANTI, GRASIELLE REGINA DOS SANTOS, HYUN KI KIM, KYU JIN ROH, GERARDO VAZQUEZ, GLORIA ROMAN, JUAN AGUILAR, NICOLE RHODES, MATEO GARDUNO, CHIARA HARRIS, TODOR SINAPOV, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JAN-PRO FRANCHISING INTERNATIONAL, INC., <br><br> Defendant. | JURY DEMANDED <br><br> Civil Action No. 08-10663-MLW |

**AMENDED COMPLAINT**

## I.  INTRODUCTION

1.  This is a national class action brought on behalf of workers who have performed cleaning services for Defendant Jan-Pro Franchising International, Inc. ("Jan-Pro"). The above-named plaintiffs and other similarly situated individuals have been subjected to systemic misrepresentations and breaches of contract in their relations with Jan-Pro as described below. Most notably, Jan-Pro purports to sell cleaning "franchises," knowing it does not have sufficient business to satisfy its obligations under its franchise agreements. Individuals purchase these "franchises" for substantial sums of money, based on Jan-Pro's misrepresentations about the guaranteed amount of monthly income the franchises will provide. In addition, Jan-Pro has also improperly misclassified these workers as independent contractors and thereby denied them

benefits to which they are entitled as employees under the wage laws of various states, including guaranteed minimum wage, overtime pay, other wage protections, and other benefits of employment, such as eligibility for unemployment and workers' compensation.  In this action, the above-named plaintiffs seek to recover, on their own behalves and on behalf of all similarly situated individuals, compensation for these violations, statutory enhancement of damages as allowed by law, and attorneys' fees and costs.

**II.      PARTIES**

2.      Plaintiff Giovani Depianti is an adult resident of Somerville, Massachusetts, who performed cleaning services for Jan-Pro in Massachusetts from approximately June 2003 to December 2006.

3.      Plaintiff Grasielle Regina Dos Santos is an adult resident of West Roxbury, Massachusetts, who performed cleaning services for Jan-Pro in Massachusetts from approximately January 2008 to the present.

4.      Plaintiff Hyun Ki Kim is an adult resident of Philadelphia, Pennsylvania, who performed cleaning services for Jan-Pro in New Jersey and Pennsylvania from approximately November 1997 to May 2005.

5.      Plaintiff Kyu Jin Roh is an adult resident of Philadelphia, Pennsylvania, who performed cleaning services for Jan-Pro in Pennsylvania from approximately December 2003 to December 2004.

6.      Plaintiff Gerardo Vazquez is an adult resident of Bloomington, California, who performed cleaning services for Jan-Pro in California from approximately July 2007 to October 2008.

7. Plaintiff Gloria Roman is an adult resident of San Jose, California, who performed cleaning services for Jan-Pro in California from approximately June 2004 to the present.

8. Plaintiff Juan Aguilar is an adult resident of Menlo Park, California, who performed cleaning services for Jan-Pro in California from approximately December 2003 to the present.

9. Plaintiff Nicole Rhodes is an adult resident of Albuquerque, New Mexico, who performed cleaning services for Jan-Pro in New Mexico from approximately June 2008 to the present.

10. Plaintiff Mateo Garduno is an adult resident of Albuquerque, New Mexico, who performed cleaning services for Jan-Pro in New Mexico, from approximately June 2008 to the present.

11. Plaintiff Chiara Harris is an adult resident of Baytown, Texas, who performed cleaning services for Jan-Pro in Texas, from approximately November 2007 to the present.

12. Plaintiff Todor Sinapov is an adult resident of Sarasota, Florida, who performed cleaning services for Jan-Pro in Florida, from approximately December 2006 to the present.

13. This is a class action that the above-named plaintiffs bring on their own behalves and on behalf of all others similarly situated, namely all other individuals who have performed cleaning services for Jan-Pro within the United States and have been subjected to the legal violations described in this complaint. The class (and any

subclasses that may be appropriate) meets all of the requirements of Rule 23 of the Federal Rule of Civil Procedure.

14. Defendant Jan-Pro Franchising International, Inc. is a domestic corporation with its principal place of business in Alpharetta, Georgia.

### III. JURISDICTION AND VENUE

15. Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1332(d)(2).

### IV. STATEMENT OF FACTS

#### A. Jan-Pro and Its Master franchisees/Agents

16. Jan-Pro operates pursuant to a "Master franchisee" system, by which the Master franchisees sell and administer Jan-Pro cleaning "franchises" and direct the work of Jan-Pro's cleaning workers/"franchisees."

17. Jan-Pro maintains the right to control the conduct of its Master franchisees/agents and exerts such actual control over its Master franchisees that the Master franchisees act as agents of Jan-Pro.

18. Jan-Pro's Master franchisees/agents do business under the name "Jan-Pro."

19. Jan-Pro and its Master franchisees/agents are part of a franchise organization.

20. Jan-Pro has developed the methods, procedures, and products which it requires its Master franchisees/agents to use in selling cleaning franchises and directing the work of Jan-Pro cleaning workers/franchisees.

21. Jan-Pro requires its Master franchisees/agents to use Jan-Pro's name and logo and to follow Jan-Pro standards, policies, practices, and procedures.

22. Jan-Pro requires that all advertising and promotional materials used by its Master franchisees/agents conform to Jan-Pro policies, and all advertising and promotional materials are subject to review and approval by Jan-Pro prior to use.

23. Individuals who purchase cleaning franchises from Jan-Pro Master franchisees/agents are Jan-Pro cleaning workers/franchisees. These cleaning workers/franchisees have included the above-named plaintiffs.

**B.     Jan-Pro's Adhesion Cleaning Franchise Agreement**

24. Jan-Pro has developed "franchise agreements" which it requires Jan-Pro cleaning workers/franchisees to sign (with Jan-Pro's Master franchisees/agents) in order to receive cleaning work.

25. Jan-Pro's franchise agreement is a form contract of adhesion establishing the terms and conditions of employment of Jan-Pro cleaning workers.

26. None of the Jan-Pro cleaning workers is able to negotiate for different terms and conditions from those appearing in the form franchise agreement.

27. Jan-Pro's franchise agreements require Jan-Pro cleaning workers to adhere to Jan-Pro standards and methods in providing cleaning services and to operate under the name "Jan-Pro."

28. Jan-Pro is a beneficiary of these franchise agreements.

29. Jan-Pro retains the right to enforce provisions of its franchise agreements directly and may directly oversee the work of any Jan-Pro cleaning worker/franchisee.

30. Jan-Pro's form franchise agreement is written exclusively in English, in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreement.

31. The form franchise agreement is not available in other languages, although many of the workers who sign these form franchise agreements have little to no fluency in English.

32. Consequently, as Jan-Pro knows, the workers do not understand the terms of the agreement, whether or not they speak English.

33. On information and belief, Jan-Pro and its Master franchisees/agents target immigrants in particular because they are easily victimized by Jan-Pro's misrepresentations and other systemic legal violations, as described herein.

**C.     Jan-Pro's Misrepresentations and Breaches of Contract**

34. In order to induce cleaning workers to sign its franchise agreement, Jan-Pro (through its Master franchisees/agents) negligently and/or intentionally misrepresents that it has sufficient business to provide the monthly income it promises the workers in their agreements. In fact, Jan-Pro does not have enough accounts to offer to workers who have signed franchise agreements.

35. Thus, Jan-Pro knows it does not have sufficient business to satisfy the terms of the franchise agreements when it advertises franchises, solicits franchisees, and enters into franchise contracts. Jan-Pro (through its Master franchisees/agents) knowingly and willfully solicits and enters into agreements which it knows it cannot perform.

36. Jan-Pro (through its Master franchisees/agents) also misrepresents that workers will receive a higher hourly rate of pay for their work than Jan-Pro knows they will be able to earn.

37. Pursuant to Jan-Pro's form franchise agreement, individuals pay substantial sums of money as franchise fees in order to obtain cleaning accounts (in the tens of thousands of dollars).

38. In exchange for these large franchise fees, Jan-Pro (through its Master franchisees/agents) guarantees a certain level of monthly income beginning after the cleaning workers/franchisees have made down payments to purchase their franchise and completed their training period.

39. However, Jan-Pro (through its Master franchisees/agents) systemically breaches its written agreements by not providing or offering sufficient or adequate work as promised to produce the guaranteed level of income.

40. Through a variety of means involving misrepresentation, Jan-Pro (through its Master franchisees/agents) purports to satisfy its obligations under Jan-Pro's form franchise agreements when it has come nowhere near satisfying those obligations. Through these means, Jan-Pro attempts to make it appear that it is the workers' fault, rather than Jan-Pro's, that they do not have sufficient accounts to satisfy their monthly income guarantee.

41. For example, Jan-Pro (through its Master franchisees/agents) negligently and/or intentionally misrepresents the number of hours per week that will be required to service the accounts offered. These misrepresentations are used to induce workers to accept the accounts toward their guaranteed level of income. The accounts typically require substantially more hours of work than Jan-Pro represents.

42. In addition, Jan-Pro (through its Master franchisees/agents) promises cleaning accounts that are geographically convenient to one another and convenient to

the workers' homes. However, the accounts are typically spread very far apart, making it very inconvenient, if not impossible, to accept or perform the work for these accounts.

43. Jan-Pro (through its Master franchisees/agents) typically contends that it has fulfilled its obligations under the franchise contract by offering accounts, knowing that accounts offered could not be accepted due to geographic inconvenience, sheer impossibility of performing the number of hours of work required to service the accounts, or rates of pay well below what was promised.

44. Jan-Pro (through its Master franchisees/agents) also frequently violates the form franchise agreement by taking accounts away without warning and for no justifiable reason. Also in violation of the agreement, Jan-Pro gives no opportunity to correct or challenge alleged deficiencies in workers' performance.

45. When doing so, Jan-Pro (through its Master franchisees/agents) frequently tells the workers performing the cleaning services that the customers were dissatisfied with their work, when in fact the customers were satisfied with their work.

46. After taking an account away from a worker, Jan-Pro (through its Master franchisees/agents) then can offer the account to another worker who has signed a franchise agreement to count toward that person's monthly guarantee. In this way, Jan-Pro churns the accounts it has, in order to make it appear that it has satisfied its franchise agreements.

47. When Jan-Pro (through its Master franchisees/agents) does not satisfy the terms of the workers' franchise agreements by not offering sufficient accounts (that are free from misrepresentations) or by taking away accounts without justification or warning, it does not refund the franchise fees that the workers have already paid.

48. Indeed, Jan-Pro (through its Master franchisees/agents) requires workers to continue making payments on their franchise fees, billing them for these payments, even when they have no further work from Jan-Pro.

49. In addition, Jan-Pro (through its Master franchisees/agents) deducts excessive fees from the payments it makes to the workers under the franchise agreements.

50. Jan-Pro (through its Master franchisees/agents) significantly underbids cleaning contracts with its clients. As a result of this underbidding and the deduction of excessive fees from their pay, the workers who have contracted with Jan-Pro receive far less pay for their work than the fair value of their services and far less pay than they were promised on an hourly and monthly basis.

51. In addition to Jan-Pro's involvement in the practices described above through its Master franchisees/agents, Jan-Pro is directly involved in these practices to the extent that it has taken over direct oversight of certain cleaning franchises.

52. Moreover, Jan-Pro receives revenue on the sales of all cleaning franchises by its Master franchisees/agents, as well as a monthly percentage of all revenue generated through the work of the cleaning workers/franchisees. In this way, Jan-Pro benefits from the deduction of excessive fees from the pay of Jan-Pro cleaning workers/franchisees.

53. Jan-Pro requires that its Master franchisees/agents sell a minimum number of cleaning franchises each year. Master franchisees/agents that do not satisfy these quotas may be terminated by Jan-Pro.

54. On information and belief, Jan-Pro's strict quotas for its Master franchisees/agents encourages and/or results in Master franchisees/agents churning cleaning accounts and selling cleaning franchises regardless of whether Jan-Pro can satisfy the amount of promised business.

55. Jan-Pro has final approval of all terminations of franchises.

**D.  Jan-Pro's Misclassification of Its Cleaning Workers as Independent Contractors**

56. Jan-Pro (through its Master franchisees/agents) purports to classify its cleaning workers as independent contractors. However, these workers are in fact employees under the statutes and common law of various states.

57. The behavioral and financial control manifested over these workers by Jan-Pro and its Master franchisees/agents demonstrates that the workers are employees rather than independent contractors.

58. The cleaning workers perform services within Jan-Pro's usual course of business, which is to provide cleaning services to customers.

59. Also, Jan-Pro (through its Master franchisees/agents) instructs the cleaning workers in how to do their work and dictates their performance of the details of their jobs.

60. The cleaning workers generally do not work in an independently established trade, occupation, profession, or business. Instead, as required by their contracts, the cleaning workers perform cleaning services exclusively for Jan-Pro's clients.

61. Also, the cleaning workers do not represent themselves to the public as being in an independent business to provide cleaning services, and they typically have not

10

invested in an independent business apart from their payment of "franchise" fees to Jan-Pro.

62. Because of their misclassification by Jan-Pro as independent contractors, these cleaning workers have not received the benefits that inure from the employment relationship under law, for example, minimum wage, time and a half for overtime hours, etc.

63. Numerous deductions are made from the cleaning workers' pay, which constitute improper deductions from wages. For example, Jan-Pro and its Master franchisees/agents deduct payments towards "franchise" fees, interest payments, payments for Jan-Pro to manage the workers' cleaning accounts, and other payments. It also withholds workers' pay when it contends that Jan-Pro clients have not paid their bills.

64. Jan-Pro's cleaning workers do not receive pay for their time spent traveling between different accounts during the work day.

65. Jan-Pro and its Master franchisees/agents deny that these cleaning workers are eligible for unemployment payments when they lose their jobs, or when they are constructively discharged by having their cleaning accounts taken away and not replaced.

66. Also, because of the misclassification, Jan-Pro's cleaning workers are not covered by workers' compensation when they are injured on the job.

## COUNT I

**(Unfair and Deceptive Business Practices)**

Defendant's conduct in inducing the plaintiffs and class members to purchase purported cleaning "franchises" and its conduct with respect to the plaintiffs and class members in the course of, and following, their performing cleaning services as described above constitutes unfair and deceptive practices in violation of the statutory and common law of the several states, including but not limited to Massachusetts Gen. L. c. 93A, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.*, the California Business & Professions Code § 17200, *et seq*, the New Mexico Unfair Practices Act, N.M.S.A. 1978, § 57-12-1, *et seq.*, the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq.*

## COUNT II

**(Misclassification as Independent Contractors)**

Defendant has knowingly and willfully misclassified plaintiffs and class members as independent contractors instead of employees, in violation of the statutory and common law of the several states, including Mass. Gen. Laws c. 149 § 148B.

## COUNT III

**(Wage Law Violations)**

Defendant's misclassification of its cleaning workers as independent contractors has deprived them of the protections of the wage laws of the several states, including guaranteed minimum wage, overtime pay, and timely payments of all wages owed

without improper deductions from pay, in violation of the wage laws of the several states, including but not limited to Massachusetts (*see* Mass. Gen. L. c. 149 §§ 148 and 150; Mass. Gen. L. c. 151 §§ 1, 1A), Pennsylvania (*see* 43 P.S. § 260.1, *et seq.*; 43 P.S. § 333.101, *et seq.*), New Jersey (*see* N.J. St. 34.11-3, *et seq.*; N.J. St. 34.11-56a, *et seq.*), California (see Cal. Labor Code § 200, *et seq.*; Cal. Labor Code § 500, *et seq.*; Cal. Labor Code § 1194), New Mexico (*see* N.M.S.A. 1978, § 50-4-1, *et seq.*), Texas (*see* V.T.C.A. Labor Code § 61.001, *et seq.*; 62.001, *et seq.*), and Florida (*see* F.S. § 448.01, *et seq.*).

## COUNT IV

### (Misrepresentation)

Defendant has committed intentional and/or negligent misrepresentation in its representations to the plaintiffs and class members, as described above, in violation of the common law of the several states.

## COUNT V

### (Quantum Meruit)

The plaintiffs and class members have been deprived by Defendant of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of the several states.

## COUNT VI

### (Unjust Enrichment)

Through the conduct described above, Defendant has been unjustly enriched under the common law of the several states.

**JURY DEMAND**

Plaintiffs request a trial by jury on all their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Certification of this case as a national class action;

2. Certification of subclasses of Jan-Pro workers who performed work in states with particular statutory claims described in this complaint (or other claims for which subclasses may contribute to the manageability of this litigation), including Massachusetts, Pennsylvania, New Jersey, California, New Mexico, Texas, and Florida;

3. Damages attributable to Jan-Pro's statutory and common law violations;

4. Statutory enhancement of damages as allowed by law;

5. Declaratory and injunctive relief, requiring Jan-Pro to cease its illegal practices;

6. Any other relief to which the plaintiffs and class members may be entitled.

Respectfully submitted,

GIOVANI DEPIANTI, GRASIELLE REGINA
DOS SANTOS, HYUN KI KIM, KYU JIN ROH,
GERARDO VAZQUEZ, GLORIA ROMAN,
JUAN AGUILAR, NICOLE RHODES,
MATEO GARDUNO, CHIARA HARRIS ,
TODOR SINAPOV,
and all others similarly situated,

By their attorneys,


___/s/ Hillary Schwab_____
Shannon Liss-Riordan, BBO #640716
Harold L. Lichten, BBO #549689
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
     & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Dated:      December 12, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2008, a copy of this document was served by electronic filing on all counsel of record.


___/s/ Hillary Schwab_____
Hillary Schwab, Esq.

15