1                UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3                          No. 1:08-cv-10663-MLW

4

5

   GIOVANI DEPIANTI, and all others similarly situated,
6              Plaintiffs

7

   vs.

8

9

   JAN-PRO FRANCHISING INTERNATIONAL, INC.,
10             Defendant

11

12                       * * * * * * * * *

13

14                     For Hearing Before:
                    Chief Judge Mark L. Wolf
15

16                     Motion to Dismiss

17

                       United States District Court
18                     District of Massachusetts (Boston)
                       One Courthouse Way
19                     Boston, Massachusetts 02210
                       November 20, 2008
20

21                       * * * * * * * *

22             REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
23                 United States District Court
         One Courthouse Way, Room 5200, Boston, MA 02210
24                  bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3   SHANNON E. LISS-RIORDAN, ESQ.
     HILLARY A. SCHWAB, ESQ.
 4      Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
        18 Tremont Street, Suite 500
 5      Boston, Massachusetts 02108
        (617) 367-7200
 6      Email: Sliss@prle.com
        For the plaintiffs
 7

 8   JEFFREY M. ROSIN, ESQ.
     SIERRA PINO, ESQ.
 9      Foley & Lardner, LLP (Bos)
        111 Huntington Avenue
10      Boston, Massachusetts 02199
        (617) 342-4001
11      Email: Jrosin@foley.com
        For the Defendant
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2              (Begins, 2:30 p.m.)

 3              THE CLERK:  Civil Action 08-10663, Giovani

 4    Depianti versus Jan-Pro Franchising International.

 5              THE COURT:  Would counsel please identify

 6    themselves for the record.

 7              MS. LISS-RIORDAN:  Good afternoon, your

 8    Honor.  For the plaintiffs, Shannon Liss-Riordan and

 9    Hillary Schwab.

10              MR. ROSIN:  Good afternoon, your Honor.

11    Jeffrey Rosin for the defendant.

12              MS. PINO:  Good afternoon, your Honor.  Sierra

13    Pino also for the defendant.

14              THE COURT:  All right.  We're here today in

15    connection with a number of pending motions which it is

16    my goal to decide today.

17         I've decided to allow the defendant's motion to

18    file the reply memo in support of the motion to dismiss

19    and stay.  Under our local rules, leave of court is

20    required, but replies are common and at times helpful.

21    So I'm allowing that motion, but, at the moment, for

22    example, the plaintiffs' fee agreement with somebody

23    else is of no consequence in my thinking.

24         I have a few factual questions that are generated

25    largely by the fact that some time has passed since the
```

1   briefing was completed.  For example, I wonder what the

2   status of the arbitration between the plaintiffs and the

3   regional master franchisees is?  Is it ongoing or, as

4   was suggested, might occur, in one of the plaintiffs'

5   submissions, has it been abandoned because it's too

6   costly?  And if it's ongoing, has it progressed in any

7   material way?

8           MS. LISS-RIORDAN:  Well, your Honor, to be

9   quite honest, it's sort of in limbo.  The arbitrator

10  ruled that the claimant would have to pay for the cost

11  of arbitration.  They can't afford it.  They're

12  immigrant janitors.  So we're really kind of stuck.  The

13  arbitration hasn't moved past that.  We can't afford the

14  fees.

15          Essentially we brought the claim against a variety

16  of defendants who appeared liable for these violations

17  and found quickly when we pursued it in arbitration,

18  because there was an arbitration clause, that Jan-Pro

19  International claimed it wasn't a party to it, so we

20  moved the claims here.  To be quite honest, Jan-Pro

21  International is the -- you know, is the larger

22  corporation who we believe is responsible for these

23  issues.  The master franchisees, so to speak, are self-

24  described mom and pop entities.  We pursued the

25  arbitration to try to get going, try to get some

1    discovery, try to -- in good faith try to pursue these

2    claims, but it's really come to a standstill because

3    they can't afford it.

4              THE COURT:  Okay.  And to what extent are the

5    claims in this case the same or different than the

6    claims in the arbitration?

7              MS. LISS-RIORDAN:  They're really identical.

8    We're saying that Jan-Pro International is responsible

9    for the same violations.  As you know there are

10   employment-type claims and there are unfair, deceptive-

11   business-practices, breach-of-contract-type claims and

12   we're saying that Jan-Pro International is perhaps a

13   joint employer with the master franchisees with respect

14   to employment-related claims and with respect to the

15   breach-of-contract, unfair-trade-practices-type claims,

16   that they are responsible for these violations, that

17   they have a business model under which they over sell

18   franchises so that misrepresentations need to be made to

19   the cleaning workers and they set up the system where

20   all of these fees and deductions are taken out of their

21   pay in which we claim are unlawful deductions, et

22   cetera.

23             THE COURT:  The complaint substantially, if

24   not completely, conflates Jan-Pro with the regional

25   master franchisees.  Is there anything that you allege

1  Jan-Pro did separate or independent from what the

2  regional master franchisees did or is your contention

3  solely that those regional master franchisees are agents

4  of Jan-Pro and Jan-Pro should be held liable along with

5  them?

6          MS. LISS-RIORDAN:  Well, the complaints do

7  read basically identically.  What we're saying is that

8  Jan-Pro International set up this whole system whereby

9  these events happened.  So the complaints have a very

10  similar language.

11          THE COURT:  But this question is different.

12  Now I'm not talking about the arbitration.

13          MS. LISS-RIORDAN:  Okay.

14          THE COURT:  I understand that it's your

15  position that Jan-Pro should be held liable for

16  misconduct by the regional master franchisees.  My

17  question is, is there some additional alleged misconduct

18  by Jan-Pro not participated in by the regional master

19  franchisees that you allege?

20          MS. LISS-RIORDAN:  Well, the allegation is

21  that Jan-Pro International is responsible for the whole

22  scheme and Jan-Pro International established this scheme

23  and it's carried out through the acts of what we allege

24  are its agents.

25          THE COURT:  All right.  But, for example, has

```
1    Jan-Pro done some kind of advertising that's separate
2    from -- to recruit your clients or is that all done
3    through the regional master franchisees?
4              MS. LISS-RIORDAN:  Well -- and we don't know
5    all the facts yet, not having done discovery, of who
6    does what, but it does appear just from our research on
7    the web that Jan-Pro International does advertise people
8    to sign up to be Jan-Pro franchisee workers or --
9              THE COURT:  Well, that's what I wanted to
10   clarify.  Do they sign up to become regional master
11   franchisees or do they sign up to be the janitors who
12   were your clients?
13             MS. LISS-RIORDAN:  Well, they sign up to be --
14   right, our clients are the actual janitors.  They sign
15   up to be Jan-Pro cleaners.  Jan-Pro calls them
16   "franchisees."  Jan-Pro International has, from what we
17   understand, has this whole business by which it
18   advertises or solicits people to enter into these
19   relationships and then they actually meet with and
20   physically sign the papers through the regional master
21   franchisees.  But they're standard form contracts that
22   are developed and written by Jan-Pro International.
23             THE COURT:  That's helpful to me.  So it's --
24   there's something you allege that Jan-Pro does that the
25   regional master franchisees don't do that's part of the
```

1  misconduct?

2          MS. LISS-RIORDAN:  Yes.

3          THE COURT:  Then my next question is, is the

4  motion to dismiss the Georgia litigation still pending?

5          MS. LISS-RIORDAN:  It's been sitting there for

6  well over a year, yes.

7       But one thing I just wanted to note about that

8  that might not have been brought out in the papers, in

9  addition to all the arguments we've made, the Georgia

10  complaint that Jan-Pro proactively filed against these

11  plaintiffs here, it alleges violations of Georgia state

12  law.  So actually there are different claims in that

13  case from what are alleged here.  We're not making

14  claims under Georgia state law.

15          THE COURT:  We'll see where we are at the end

16  of this, but it's possible that I may order the filing

17  of an amended complaint to make more clear what Jan-Pro

18  has allegedly done through its agents -- and I know

19  they're not subsidiaries, and what, if anything, it's

20  done independently, like that advertising.

21       All right.  Now, if I were to grant the

22  defendant's motion to dismiss Counts 1 through 7 on the

23  basis that there are insufficient allegations of an

24  agency relationship between Jan-Pro and the regional

25  master franchisees, the other issues regarding dismissal

1    are stayed, would be moot, so we should start with

2    that.  At the moment that motion doesn't strike me as

3    meritorious.

4         The applicable standard is -- and is as stated by

5    the Supreme Court in *Bell,* that essentially there needs

6    to be a plausible basis for relief alleged, that this

7    isn't the time for me to predict who's going to win.

8    And it seems to me that Paragraphs 7, 11 and 12 of the

9    complaint adequately allege that Jan-Pro, acting through

10   agents, engaged in actionable misconduct.  But, of

11   course, Mr. Rosin, that's a tentative view.  I'm

12   interested in hearing from you on it.  But I did want to

13   share that view with you.

14        Go ahead.

15        MR. ROSIN:  Thank you, your Honor.  Okay.  I

16   don't disagree that the relevant words are in the

17   complaint and that, in fact, if there actually is an

18   agency relationship at issue here, there may be a right

19   to pursue Counts 1 and 4 in the complaint.  However, um,

20   looking at the cases --

21        THE COURT:  Let's see.  Count 1.

22        MR. ROSIN:  Sorry.  Count 1 is the deceptive

23   trade practices, Count 4 is the misrepresentation.

24        However, the pleading standard of plausibility

25   would require some facts in the complaint that might

1     show how the masters are actually controlled by -- and

2     either on a day-to-day basis or functionally, by Jan-Pro

3     International, and the franchise relationship, your

4     Honor, is really a special kind of relationship whereby

5     simply being within a franchise doesn't mean that one is

6     an agent of another.  In fact, simply being the

7     subsidiary of a parent doesn't mean that one is the

8     agent of another.

9          So I respectfully would argue that the statement

10    that we are the -- the masters or the agents of the

11    international entity is just the kind of conclusory

12    allegation that's not enough, without more.

13              THE COURT:  Well, what if they amended the

14    complaint to say that Jan-Pro itself advertises and

15    people who want to be janitors come in and then they

16    sign agreements with the regional master franchisees?

17              MR. ROSIN:  Exactly, your Honor, and that's

18    the problem with any of these --

19              THE COURT:  Well, would that be enough?

20              MR. ROSIN:  If they alleged in an amended

21    complaint how Jan-Pro actually does something wrong

22    toward the unit franchisees, even if it was advertising

23    -- we've heard that they advertised the unit

24    franchisees, but we haven't heard that they advertised

25    wrongfully.  The allegations in the complaint are that

1  the masters wrongfully said -- the master franchisees

2  wrongfully said, "You'll have all this business" and

3  "You'll have all these accounts" and "You'll make all

4  this money," but that's not necessarily -- and it's not

5  in the advertisements of Jan-Pro International.

6      So your question to Miss Liss-Riordan was, I

7  thought, a "No," she couldn't say what Jan-Pro

8  International separately does.  And so I would ask your

9  Honor to require her to do that in an amended pleading.

10         THE COURT:  Well, but with regard -- I mean,

11  if there are what you regard as adequate allegations of

12  agency, then the motion to dismiss should be denied as

13  well, right?

14         MR. ROSIN:  If there are.

15         THE COURT:  And this is one of those

16  circumstances where they haven't had discovery.  Now,

17  that doesn't excuse everything, but to the extent this

18  is somewhat discretionary, there are courts that have

19  noted that in the absence of discovery, maybe less

20  should be expected in terms of the allegation.

21         MR. ROSIN:  My issue, your Honor, is that I

22  look in the complaint and I say, "Well, how are the

23  masters actually agents of Jan-Pro International?"  I

24  look at it -- and I certainly know that this is a

25  procedural argument.  There would be a dismissal without

1    prejudice.  There'd be a right to amend.  But let's at

2    least follow that form here.  Let's at least honor **Bell**

3    **Atlantic vs. Twombly**.  I don't see how it's plausible at

4    this point in the complaint how the masters are agents.

5    I respectfully disagree on that.

6        But that's only Counts 1 and 4.  Plaintiffs'

7    counsel just argued, my sister just argued that there's

8    a joint employer theory at issue here.  That's nowhere

9    in the complaint.  That's Counts 2 and 3 of the

10   complaint.  Counts 2 and 3 of the complaint are that the

11   unit franchisees were wrongfully misclassified as

12   independent contractors and that there's been wage and

13   benefit violations.

14       There's no joint employer theory in the complaint

15   because, as your Honor is probably aware, the **Bay State**

16   **Alternative Staffing vs. Hermit** case sets forth what it

17   takes to be a joint employer of an employee and it's the

18   right to hire and fire, it's supervision of the daily

19   life of the employee, it's maintaining the employment

20   records, it's, you know, dictating the terms and

21   conditions of someone's daily life of employment.  Those

22   allegations aren't anywhere in the complaint.  And, once

23   again, honoring **Bell Atlantic vs. Twombly**, we see

24   conclusory allegations there as well.  In fact, we don't

25   even see the words "joint employment" in this

1    complaint.

2        So I think that the right step -- although it may

3    lead us in the same place, is to require an amended

4    pleading because I don't think that Jan-Pro wrongfully

5    advertises to unit franchisees.  I think when pressed --

6    when you asked Ms. Liss-Riordan this question, she's now

7    been dealing with these clients for a good maybe one or

8    two years now.  There is no separate conduct alleged

9    that's wrongful by Jan-Pro International.  And she

10    should be required to put that into a pleading if there

11    is anything there.  Because as she said, everything in

12    our complaint is alleged to be done through the master

13    franchisees.

14        THE COURT:  All right.  The alternative

15    grounds -- just one second, for dismissal of Counts 2,

16    3, 5 and 6 also seem to be quite closely bound up with

17    the contention that there's inadequate pleading of an

18    agency relationship.  Do I read that right?

19        MR. ROSIN:  Well, I think Counts 5 and 6, your

20    Honor, are unjust enrichment and quantum meruit.  There

21    the -- the real crux of our argument there is that the

22    unit franchisees were never paid by Jan-Pro

23    International.  They never had a financial relationship

24    with Jan-Pro International.  And in order to plead that

25    claim, you need to have a reasonable expectation of

1    being paid by them.  So that's, I think, separate from

2    the agency point.

3              THE COURT:  But -- okay.  That reminds me of

4    the argument.  But if this survives, and you've

5    accurately stated the law and there are no facts, then

6    you'd win on summary judgment.  Is the scope of

7    discovery any different if 5 and 6 are in the case if

8    the other counts survive?

9              MR. ROSIN:  I don't think the scope of

10   discovery changes that much, Judge.  I can't see how it

11   does.  I mean, you know, the problem that we have is

12   that next we'll likely get a Rule 23 motion for class

13   certification and we'll have to brief whether class

14   certification is appropriate on two additional counts

15   that really haven't been properly pleaded and shouldn't

16   be in the case.  If your Honor was willing to allow us

17   to do discovery and move for summary judgment before we

18   dealt with class issues, then that's another story.

19             THE COURT:  We're going to take that up at the

20   end of the argument.  We'll see what's left and what the

21   best way to do it is.  Okay.  Thank you.  Why don't I

22   hear from Miss Liss-Riordan on the motion to dismiss.

23             MS. LISS-RIORDAN:  Your Honor, the plaintiffs,

24   again, are immigrant janitors who just know that they

25   signed up to do Jan-Pro cleaning work.  They don't know

1   the ins and outs of what Jan-Pro International does

2   versus what Jan-Pro, quote, "master franchisees" do.

3        If you want us to amend the complaint to make

4   further allegations, we're happy to do so.  We now have

5   the agreements, because it's been submitted with

6   Jan-Pro's papers, between Jan-Pro International and the

7   regional master franchisees.  You're going to have a

8   whole list of facts that we've discerned just from this

9   document showing the control that Jan-Pro International

10  has over the master franchisees.

11            THE COURT:  Why don't you give me a flavor of

12  them.

13            MS. LISS-RIORDAN:  Sure.  Well, one of the

14  ones that goes directly to what Mr. Rosin just said, is

15  that Jan-Pro International has control over terminations

16  of the -- it's on Page 17 of the agreement.  That

17  Jan-Pro International has to approve all terminations of

18  the, quote, "unit franchisees."  So --

19        As to joint employer allegations, we don't use the

20  word "joint employer" in the complaint because this

21  complaint is against Jan-Pro International.  We allege

22  Jan-Pro International is their employer.  We don't need

23  to say that they're joint employers with other entities

24  that we're pursuing in arbitration.

25        There are -- just to take, without the benefit of

1    discovery, just from this document alone, there are

2    facts in here related to that Jan-Pro International sets

3    the methods, procedures and products that are used by

4    all of the franchisees' cleaning workers.  The master

5    franchisees use documents produced and approved by

6    Jan-Pro International.  Jan-Pro International sets a

7    quota for how many franchises the master franchisees

8    need to sell.  And part of what we're expecting

9    discovery is going to show about these quotas is that

10   there's pressure on the master franchisees to sell so

11   many franchises.  They end up having to turn, I think,

12   one or two, to meet their obligations to Jan-Pro

13   International.  In that way Jan-Pro International is

14   responsible for the overselling of these franchise

15   packages.

16        Jan-Pro International receives royalties that come

17   out of the pay from the janitors.  So to the extent that

18   we claim that there have been unlawful deductions made

19   from their pay and excessive royalties taken out,

20   Jan-Pro International is directly receiving some of

21   those funds.

22        Jan-Pro International has the power to take over

23   contracts, the cleaning contracts if it's not satisfied

24   with how the master franchisees are administering or

25   managing them.  It's just an example of some of the

1    things which -- and if you wanted us to amend our

2    allegations to include some of these that we now have

3    specifically, we could do that.

4         With respect to the -- there was a brief mention

5    of the common law claims of unjust enrichment and

6    quantum meruit.  I mean, I think keeping these claims in

7    is not going to change the scope of discovery at all.

8    You know, mostly it would be a legal issue as to whether

9    or not it's possible to proceed on these claims in the

10   face of a written contract with the master franchisees.

11   But we think that the elements of the common law claims

12   can be satisfied here.  But it's premature to start

13   taking and whittling down the complaint in those ways.

14        THE COURT:  Okay.  Well, this is helpful.  And

15   I'll just -- you may be seated.  And I'll decide at the

16   end of the hearing whether to order an amended

17   complaint.  But I do find that the complaint is

18   minimally adequate and I also expect that, if necessary,

19   the plaintiffs could make, in good faith, more specific

20   allegations.

21        As the parties recognize, the applicable standard

22   on a motion to dismiss is as stated in ***Bell Atlantic***

23   ***Corporation vs. Twombly***, 127 S. Ct. 1955 at 1964, a 2007

24   case.  And there -- well, and the First Circuit has

25   subsequently held that the ***Bell Atlantic*** standard

1   applies to all motions to dismiss and did that in cases

2   like **ACA Financial Guaranty Corporation**, 512 F. 3rd 46

3   at 58.

4        In **Bell Atlantic**, the Supreme Court held, in

5   pertinent part, that Federal Rule of Civil Procedure

6   8(a)(2) requires only:  "A short and plain statement of

7   the claim showing that the pleader is entitled to relief

8   in order to give the defendant fair notice of what the

9   claim is and the grounds upon which it rests.  This does

10   require more than labels and conclusions and a formulaic

11   recitation of the elements of a cause of action will not

12   do."  Instead, the Supreme Court held that, to state a

13   claim, a complaint -- "requires a complaint with enough

14   factual matter taken as true to suggest a viable cause

15   of action.  Asking for plausible grounds to infer a

16   valid cause of action does not impose a probability

17   requirement at the pleading stage, it simply calls for

18   enough facts to raise a reasonable expectation that

19   discovery will reveal evidence of the alleged

20   misconduct.  Of course, a well-pleaded complaint may

21   proceed even if it strikes a savvy judge that actual

22   proof of those facts is improbable and that a recovery

23   is very remote and unlikely."

24        The First Circuit has distilled this in **ACA** to

25   say:  "In order to survive a motion to dismiss, a

1    complaint must allege a plausible entitlement to

2    relief."

3        I find that there are sufficient allegations of an

4    agency relationship between the defendant, Jan-Pro, and

5    its regional master franchisees to state a plausible

6    claim against Jan-Pro.  Those allegations are primarily

7    in Paragraphs 7, 11 and 12 of the complaint.

8        The plaintiffs allege, in Paragraph 7, that:

9    "Upon information and belief, Jan-Pro works closely with

10   regional corporate affiliates, all of which do business

11   under the name 'Jan-Pro,' in order to sell cleaning,

12   quote, 'franchisees,' end quote, franchises to

13   individuals.  Jan-Pro requires all individuals,

14   including the named plaintiffs, to sign the same

15   standard-form contract, to adhere to the same standards

16   and methods of providing cleaning services to operate

17   under the name 'Jan-Pro.'"

18       In addition, the complaint alleges that:  "In

19   order to induce workers to sign these franchise

20   agreements, Jan-Pro, through its agents, negligently

21   and/or intentionally, misrepresents that it has

22   sufficient business to provide the monthly income it

23   promises the workers in their agreements."  And that's

24   Paragraph 11.  Paragraph 12 alleges that:  "Jan-Pro,

25   through its agents, knowingly and willfully solicits and

1   enters into agreements which it knows it cannot

2   perform."

3        I find that that's sufficient.  Essentially I find

4   the defendant's reliance on the Massachusetts Superior

5   Court decision of *Clark* to be misplaced.  As the

6   defendant observes, the Court in that case did grant a

7   motion to dismiss because of insufficient pleadings

8   regarding the existence of an agency relationship,

9   stating that:  "The mere conclusory assertion of an

10  agency relationship is not enough to state a claim."

11  However, the Court went on to identify the types of

12  allegations that would support a claim based on an

13  agency relationship.  It stated:  "The complaint in this

14  case contains no allegation of any conduct by

15  Microfinancial amounting to participation in the

16  business of Leasecomm or the interactions between

17  Leasecomm and these plaintiffs, nor is there any

18  allegation of any contract or other arrangement by which

19  Leasecomm dealt with the plaintiffs as agents for

20  Microfinancial."

21       In contrast, in this case, the plaintiffs have

22  made allegations that the defendant participated in the

23  business of the regional master franchisees and

24  participated in the interactions between the regional

25  master franchisees and the plaintiffs.  And those

1  allegations, for example, are in Paragraph 7 that I read

2  a moment ago.

3       Therefore, the Massachusetts state court statement

4  of the necessary allegations of an agency relationship

5  in **Clark** actually seems to support the plaintiffs'

6  position and counsel against dismissal of their claims.

7       As information regarding the relationship between

8  Jan-Pro and the regional master franchisees is in

9  Jan-Pro's control, it's not appropriate to expect the

10  plaintiffs to make a much more detailed claim of an

11  agency relationship without some discovery, since they

12  have made a minimally adequate set of allegations.

13       For example, the Third Circuit, in an unpublished

14  case, **Jurimex**, 65 Fed. Appx. 803 at 808, stated:  "We

15  have held that discovery is necessary when an agency

16  relationship is alleged, thereby implicitly allowing

17  allegations of agency to survive a facial attack."  So

18  for that reason, the overriding motion to dismiss is

19  denied.

20       I'm also denying the more limited motion to

21  dismiss Counts 2, 3, 5 and 6.  There may be some

22  imperfections in the precision of the allegations of

23  Counts 5 and 6, which allege theories of quantum meruit

24  and unjust enrichment, but any such imperfections will

25  not affect the parameters of discovery and at this point

1    have any practical effects on it.

2         The main theme of the more limited motion to

3    dismiss Counts 2, 3, 5 and 6 is that the facts alleged

4    are not sufficient to properly present a claim of

5    liability under a theory of agency.  For the reasons I

6    describe, I don't agree.

7         The next motion is the defendant's motion to stay

8    pending the AAA arbitration between the plaintiffs and

9    the regional master franchisees.  It is my understanding

10   that I have the discretion to issue a stay on equitable

11   grounds.  It wouldn't be a stay rooted in Section 3 of

12   the Federal Arbitration Act, for reasons I can describe,

13   but it's essentially because Jan-Pro's not a party to

14   the agreement that provides for arbitration.  I know I

15   have the discretion to control my docket, but this is a

16   situation where Jan-Pro has successfully resisted being

17   joined in the arbitration.

18        The issues seem to be identical in the arbitration

19   in this litigation, but essentially it's alleged that

20   Jan-Pro is at the heart of the matter and my present

21   sense is that (A) the allegations are sufficient, as

22   I've said, to survive a motion to dismiss and this is

23   the only forum in which discovery can probably be had

24   from Jan-Pro, so I'm not inclined to exercise my

25   discretion to stay pending the outcome of the

 1    arbitration.  But again those are my tentative views.

 2    I'm trying to be as transparent as possible so that the

 3    parties can focus on it.  Do you want to address that,

 4    Mr. Rosin?

 5              MR. ROSIN:  Thank you, your Honor.  I'll

 6    address the stay issue.  We do have the Georgia action,

 7    and I know it's been lingering down there --

 8              THE COURT:  I'm going to take that up

 9    separately.

10              MR. ROSIN:  Oh, okay.  Thank you for the

11    opportunity to address your tentative view on the motion

12    to stay pending the arbitration.  The fact that the

13    issues are identical, I'll just mention it really

14    briefly.  If the master franchisees who did deal

15    directly with the unit franchisees didn't do anything

16    wrong, then we didn't do anything wrong.

17        My colleague, my sister claims that we may have

18    separately advertised and that may be wrongful, we may

19    have advertised directly and that may be wrongful, but

20    the unit franchisees are not employees of Jan-Pro

21    International.  We know that they have a contractual

22    relationship with the master franchisees.  So we know

23    that they're not at-will employees.  We know that

24    they're not contract employees with us.  The question --

25    the only relevant question is whether there's a -- I

1  guess, some sort of a joint employment relationship.

2      I don't know how Counts 2 and 3 can proceed here

3  unless we know first, in the arbitration, whether the

4  unit franchisees are employees of the master

5  franchisees.  And once we know the answer to that, then

6  we can tackle the joint employment question here.

7      So I think that with respect to those two counts,

8  we need to wait for the arbitration to run its course.

9  That's what I have to say.

10          MS. LISS-RIORDAN:  Your Honor, a couple of

11  reasons that I believe your tentative conclusions are

12  correct.  As stated earlier, I don't know if the

13  arbitration is going any further because of the ruling

14  about the cost sharing.  Um, there's no reason to wait

15  to see how that comes out.

16      Your Honor might be interested to know that

17  there's another very similar case that we're pursuing

18  against Coverall, which is another -- one of these

19  international cleaning franchise companies.  You may be

20  familiar with the case.

21          THE COURT:  I know *Coverall.*  You and I were

22  doing *Coverall* about two years ago, or three years ago.

23          MS. LISS-RIORDAN:  Yes, and it's back.  It's

24  now before Judge Young.

25          THE COURT:  It's before Judge Young?

```
 1                MS. LISS-RIORDAN:  Yes.
 2                THE COURT:  I thought the *Coverall* case
 3      settled and that's why I didn't try it.
 4                MS. LISS-RIORDAN:  Right, the initial *Coverall*
 5      case settled on behalf of the ten lead plaintiffs and
 6      there's a new *Coverall* case that's being brought forth
 7      as a class action again that's currently pending.
 8           In the *Coverall* case, there are some of the
 9      janitors who have signed arbitration agreements and some
10      have not and Judge Young has ruled that the case for
11      those who don't have arbitration agreements should go
12      forward and he's not awaiting resolution -- right now
13      we're at the First Circuit on issues regarding the
14      enforceability of the arbitration clauses, but he's
15      ruled that he's not going to wait for all those
16      arbitration issues to get decided.  We're pressing forth
17      with the claims for which there aren't arbitration
18      clauses.  We have a direct precedent from this district
19      on that issue.  And then the practical matter is that
20      the arbitration here is unlikely to be proceeding.
21                MR. ROSIN:  May I, your Honor?
22                THE COURT:  Yes.
23                MR. ROSIN:  I believe that in *Coverall*, and
24      you guys both know better than me, that we have a -- the
25      *Coverall* entity contracts directly with the janitors.
```

1          THE COURT:  Well, I'm not taking *Coverall* into

2   account.  I was just surprised there was another

3   *Coverall* case.  It probably should have been denominated

4   as a related case and assigned to me.  But I'm not

5   complaining.  I'm just observing that it look perhaps

6   like the local rules were involved.

7          MR. ROSIN:  Thank you, your Honor.

8          THE COURT:  All right.  I am hereby denying

9   the motion to stay pending a Triple A arbitration

10  between the plaintiffs and the regional master

11  franchisees.  As I said, I recognize that I have the

12  discretion to stay the arbitration -- I'm sorry, to stay

13  this case on equitable grounds, not based on Section 3

14  of the Federal Arbitration Act because the defendant is

15  not a party to arbitration.

16       In a case that I believe the parties did not cite,

17  *IDS Life Insurance Company vs. Sun America, Inc.*, 103 F.

18  3rd 524, a 1996 Seventh Circuit case, the Seventh

19  Circuit repudiated the *Morrie Mages* decision on which

20  Judge Gorton relied in part in *Spencer Furniture*.  The

21  Seventh Circuit wrote, at Page 530:  "*Mages* and *McCowan*

22  are cases in which a party to an arbitration agreement,

23  trying to get around it, sues not only the other party

24  to the agreement but some related party with which it

25  has no arbitration agreement in the hope that the claim

1    against the other party would be adjudicated first and

2    have preclusive effect in the arbitration.  Such a

3    maneuver should not be allowed to succeed.  But it's

4    blocked not by Section 3, which is not addressed to the

5    problem of parallel judicial arbitral proceedings, but

6    by the principles of parallel proceeding abstention,

7    which in the case just put would require the court to

8    stay the proceedings before it would let the arbitration

9    go forward unimpeded.  We do not quarrel with the result

10   in *Mages*, only with the attempt to ground it in Section

11   3."

12        So I recognize I have the equitable discretion to

13   control my docket and to grant the stay if I think it's

14   the most appropriate thing to do.  However -- and

15   consistent with that are the Supreme Court's decision in

16   *Moses H. Cone*, 460 U.S. 1 at 21, Note 3, and the other

17   cases.

18        However, in this dispute, Jan-Pro has successfully

19   resisted being joined in the arbitration.  I do assume

20   the issues are identical.  Well, let me put it this

21   way.  That all the -- the complaint in this case and the

22   complaint in the arbitration raise similar issues.

23   However, in this case, the complaint alleges that

24   Jan-Pro itself engaged in misconduct.  It alleges it

25   engaged in misconduct through its agents.  But I expect,

1    particularly in the amended complaint, they'll be

2    allegations of actions taken independently by Jan-Pro.

3         So given the fact that the plaintiffs' main

4    objective is Jan-Pro, that it's represented that the

5    arbitration has stalled and that I have discretion, I do

6    think -- and it's more work for me, but it's in the

7    interest of the administration of justice not to stay

8    this pending the outcome of an arbitration that may

9    never end and may not completely resolve the issues in

10   this case anyway.

11        Then -- I know I'm also asked to stay this case

12   pending the outcome of the Georgia litigation, however,

13   under *Colorado River* and *Moses H. Cone*, I think such a

14   stay is disfavored.  Generally, moreover, there seems to

15   be a question, or if there is a question for the Georgia

16   court, about whether it has jurisdiction over the two

17   named plaintiffs who are defendants in that declaratory

18   action, a motion to dismiss has been pending for more

19   than a year, and this is an effort by the plaintiffs to

20   have certified and pursue a national class action and we

21   relatively recently had legislation encouraging such

22   actions to be brought in Federal courts.  So I'm not

23   inclined to stay based on the Georgia litigation, but

24   I'm interested in hearing about that, too.

25             MR. ROSIN:  Thank you, your Honor.  I think

1    I'm going to use this opportunity to say, you mentioned

2    that you would expect, in an amended complaint, there

3    would be allegations against Jan-Pro directly.

4              THE COURT:  I think now there are.  They have

5    essentially -- in terms of the allegations, they say

6    everything that was done wrong was done wrong by

7    Jan-Pro, in some instances through its agent, and they

8    may not be able to prove that, and you don't think they

9    will, but that's what they're alleging, that Jan-Pro is

10   the bad guy.

11             MR. ROSIN:  I know that is what they're

12   alleging, but I thought I heard my sister say, when you

13   asked, "Did Jan-Pro do anything itself, separately?" she

14   mentioned, only in response to your Honor's suggestion,

15   that it might have advertised separately and

16   wrongfully.  But then she said that -- she was saying

17   that everything that was done wrongful here was done

18   through the agency.

19             THE COURT:  Well, then I think she indicated

20   though that -- well, I don't know, maybe she can clarify

21   it.

22             MR. ROSIN:  What I wanted to use this

23   opportunity to say, your Honor, was that because the

24   Georgia action is pending and because the plaintiffs --

25   I guess the defendants in that action, who are the

```
 1    plaintiffs in this action, sought to dismiss for lack of
 2    personal jurisdiction, they have to be very careful
 3    about what they say in this court that they do or have
 4    received directly from Jan-Pro International.  Saying
 5    that they do anything directly with Jan-Pro
 6    International, receive anything directly from Jan-Pro
 7    International, is going to mean that there is more
 8    support for there being personal jurisdiction in
 9    Georgia.  So, credit to my sister, but she's walking a
10    very fine line here, which is why we ask your Honor to
11    require her to put it in an amended complaint, because
12    this fine line that she's walking is something that we
13    think needs to be addressed either in that court or in
14    this court.
15              THE COURT:  Okay.
16              MR. ROSIN:  Thank you, your Honor.
17              THE COURT:  Well, I've explained my tentative
18    view with regard to the Georgia litigation, but would
19    you like to be heard, Miss Liss-Riordan?
20              MS. LISS-RIORDAN:  Um, I don't really think I
21    have much more to add.  I mean, obviously, Jan-Pro knew
22    that we were pursuing these claims and then it filed
23    that case down there and tried to drag us down to
24    Georgia to litigate there.  I think for all the reasons
25    you've already stated, it's more appropriate for these
```

1    things to be litigated here and, as I've stated earlier,

2    these Georgia claims are actually different from the

3    claims here because they involve Georgia state law,

4    which we're not using.

5           THE COURT:  Well, in this case -- with regard

6    to this motion I think the primary Supreme Court

7    decision on preemption is *Colorado River*, 484 U.S. 800.

8    I do think there's a presumption in favor of exercising

9    jurisdiction or not staying, to be more precise in the

10   circumstances of this case.  The Georgia case is

11   pending.  I'm reminded it involves Georgia law, not

12   Massachusetts law, which governs the instant case.

13   Georgia may not have personal jurisdiction over the

14   named plaintiffs in the instant case, who were

15   defendants in that case.  A motion to dismiss has been

16   pending for more than a year.  It was based on an

17   alleged lack of personal jurisdiction.

18        The plaintiffs here are attempting to bring a

19   nationwide class action and this favors denying the

20   stay.  As the court in the Eastern District of New York

21   said in *Steinberg vs. Nationwide Mutual Insurance*

22   *Company*, 418 F. Supp. 2nd 215 at 225, in 2006:  "As to

23   the adequacy of the state court to protect the

24   plaintiffs' rights, it is again noted that the Class

25   Action Fairness Act, 28 United States Code Section 1332,

1    was enacted specifically to bring this type of national

2    class action within the purview of Federal court

3    jurisdiction.  Congress has concluded that the Federal

4    court is the appropriate forum for such cases because it

5    is better suited to handle nationwide issues."

6           So I'm denying the stay to await the outcome of

7    the Georgia litigation.

8           There's also the defendant's supplemental motion

9    to dismiss Counts 2 and 3 based on the arbitrator's

10   ruling, but my sense is that that doesn't have any

11   conclusive effect at least yet because that's not a

12   final judgment as required by Massachusetts law.  Would

13   you like to be heard on that, Mr. Rosin?

14          MR. ROSIN:  Really briefly, your Honor, just

15   to cite the Restatement, which says that it's to be a

16   valid and final judgment instead of a final judgment on

17   the merits, and that's in the *In re Sonus Networks* case

18   that we cited, it's 422 F. Supp. 2nd 281.  We recognize

19   that that's a difficult argument on our part and we see

20   where your Honor is going and I don't think there's much

21   more to say about that.

22          THE COURT:  All right.  Well, let me say the

23   following.  I'm denying that supplemental motion to

24   dismiss Counts 2 and 3 based on the arbitrator's

25   ruling.  I find that it does not, at least yet, have any

1   preclusive effect.

2       An arbitration award can have a preclusive effect

3   in a judicial proceeding, as was held in **Wolf vs.**

4   **Gruntal**, 45 F. 3rd 524 at 528.  In addition, the party

5   in a litigation who is not a party to the arbitration

6   can get the benefit of such preclusion.  The Second

7   Circuit noted that in **Boguslavsky**,

8   B-O-G-U-S-L-A-V-S-K-Y, 225 F. 3rd 127 at 130.  I note,

9   however, that this is a discretionary matter that the

10  Supreme Court described in **McDonald**, 466 U.S. 284 at

11  287, noting that 28 U.S.C. Section 1738 does not require

12  Federal courts to give arbitration awards full faith and

13  credit because arbitration is not a judicial

14  proceeding.  But if the standards for issue preclusion

15  were met, I would have the discretion to give the -- a

16  final arbitration award preclusive effect.

17      This is an issue, as I understand it, governed by

18  Massachusetts law.  And **South Boston Allied War Veterans**

19  **Counsel vs. The City of Boston**, 875 F. Supp. 891 at 908

20  to 909, the case involving the St. Patrick's Day parade,

21  I summarized what Massachusetts law requires in a way

22  that I think it still reliable.  I said:  "In

23  Massachusetts, to invoke collateral estoppel the

24  following requirements must be met.  One, the issue on

25  which preclusive effect is sought must have been

1    actually litigated and determined.  Two, the decision

2    must have been a valid and final judgment.  Three, the

3    determination must have been essential to the judgment.

4    And, four, the estoped party must have had a full and

5    fair opportunity to litigate the issue."

6        In this case, the arbitration decision that the

7    plaintiffs in this case were independent contractors is,

8    as its title indicates, a partial award ruling on the

9    issue of claim construction, something the AAA Rules for

10   Class Certification state shall be done early in the

11   case.  The arbitrator repeatedly stated that his

12   decision was on the basis of the current record,

13   suggesting that he anticipated that new evidence be

14   offered.  Not all issues have been resolved.  There's

15   not been a hearing, which raises a question about

16   whether the plaintiffs here have had a full and fair

17   opportunity to litigate in the arbitration, but I find

18   it's not final and I'm not exercising my discretion to

19   stay -- well, to find issue preclusion in the

20   circumstances of this case whereas I said Jan-Pro

21   successfully resisted participating in the arbitration

22   and the arbitration is not final and no hearing has been

23   held.

24       I'm going to deny Jan-Pro's motion for sanctions.

25   It alleged that a complaint shouldn't have been filed

1   when the motion to dismiss is meritorious, no opposition

2   should have been filed, but the motion to dismiss is not

3   meritorious.  The complaint is minimally adequate.

4        So that takes us to scheduling.  The -- we could

5   do this on the record, too, I think.  The -- why don't

6   you explain to me your respective positions on

7   scheduling.  I do think that it would be fair to the

8   defendant, but also helpful to the plaintiffs to

9   elaborate the allegations in an amended complaint and

10  state with greater clarity the extent to which the

11  plaintiffs are relying on actions that Jan-Pro took

12  through agents, the regional master franchisees, and the

13  extent to which it's contending Jan-Pro did something

14  directly that was wrong and impacted the plaintiffs in

15  this case.  So I'll build that in.

16       I understand, Miss Liss-Riordan, you don't want to

17  argue against that, at this point, and if I'm wrong,

18  you'll tell me.  But then you have different conceptions

19  of how discovery should go and I want you to explain

20  those different conceptions because I'm not sure I fully

21  understood the distinctions from the joint statement.

22  Why don't I hear from the defendant first.  How is it

23  that you propose discovery be phased?

24            MR. ROSIN:  Your Honor, the employment issue,

25  obviously, would be, um, dispositive of Counts 2 and 3.

 1    The agency issue would be dispositive of Counts 1 and

 2    4.  Um, that would leave unjust enrichment and quantum

 3    meruit and you know our position on that.  I think it

 4    could be dispositive of the whole case.  If, in fact,

 5    the master franchisees were not our agents -- it happens

 6    all the time in a franchisee/franchisor relationship

 7    that the franchisee is not deemed the agent of the

 8    franchisor, and if, in fact, they weren't employees of

 9    either us or the master franchisees, then I think that

10    that disposes of the entire case.  And it's focused

11    narrow discovery.  And after that discovery we would

12    brief those issues if appropriate.  We would brief those

13    issues and maybe we would dispose of the whole case.  It

14    would be, in effect, summary judgment.  There wouldn't

15    be a need to file another motion for summary judgment.

16        What we would do thereafter is if those claims

17    survived, we'd go right into, I guess, class discovery

18    and we would do a motion for class certification.

19             THE COURT:  And the additional class discovery

20    would be what?

21             MR. ROSIN:  Well, let's say a couple of the

22    counts survive -- I hope not, but let's say that they

23    do, you would have class discovery into -- you know, are

24    the laws in the same states manageable in one forum?

25    Are the master franchise relationships with these unit

1   franchisees in this area of the country the same as they

2   are in that area of the country?  Does it depend on, you

3   know, oral conversations?  Oral conversations tend to be

4   issues that don't make class certification appropriate.

5   But why do all those things until we know what claims

6   we're actually adjudicating.  So that's it.

7           THE COURT:  But isn't there some overlap, for

8   example, you know, oral statements could relate to both

9   phases in your conception?

10          MR. ROSIN:  It is possible, but I think

11  overall the first case of discovery is how do the

12  masters and Jan-Pro relate to each other, the regional

13  master franchisees and Jan-Pro International relate to

14  each other?  The second phase is how do the units really

15  deal with the master franchisees?  So it's really

16  separated by that structure.  And I think that there may

17  be some overlap, there may be some questions.  But to a

18  large part, we're only going to need to depose the

19  plaintiffs once and it will probably take place in the

20  first phase of discovery.  But in terms of getting, you

21  know, the master franchisees involved and what they're

22  involved in, um, we may not need to get there.  We may

23  only need to depose the plaintiffs and Jan-Pro

24  International, one 30(b)(6) deposition for all we know.

25          THE COURT:  All right.  Why don't I hear from

1   the plaintiffs on why I shouldn't do that and what you
2   propose and why it's better.
3          MS. LISS-RIORDAN:  Well, your Honor,
4   essentially, I guess, the main difference between our
5   proposals, aside from the fact that we've asked for hard
6   deadlines made out for essentially floating deadlines,
7   is that they seem to be asking for phased discovery that
8   would limit our initial discovery to certain issues that
9   are key to their defenses, i.e., their defense is going
10  to be "We're not responsible for any of this.  If
11  anything happened, it was the fault of these master
12  franchisees."  Our allegations against Jan-Pro
13  International are really intertwined with all of those
14  facts.
15      We want to find out, you know, what Jan-Pro
16  International sold to whom, what it was promising, the
17  master franchisees are going to get wrapped up in all of
18  this but there are going to be these artificial
19  distinctions drawn between what they're claiming as the
20  initial discovery and I expect it's going to just lead
21  to disputes over whether -- what we're seeking as part
22  of this phased discovery or not.  So we'd like to start
23  discovery in general and I understand they're going to
24  raise the defense that they're not the liable party,
25  but --

```
 1            THE COURT:  And I take it you understand that,
 2    in one sense, this is risky business for your clients
 3    and particularly for you as the attorneys because if
 4    there's more and more expensive discovery but at the end
 5    of all of that summary judgment on some or all of the
 6    claims is appropriate or class certification is not
 7    appropriate, you may have expended more time after
 8    expense than you would if it were phased.  But
 9    nevertheless you want to accept that risk.
10            MS. LISS-RIORDAN:  Right.  In order to start
11    moving this along expeditiously, I don't see a reason to
12    distinguish between, quote, "lapsed discovery" and
13    "other discovery," it's going to be the same.  We're
14    going to be looking from the list of the franchisees,
15    who was promised what, who was responsible for that.
16    There's really no reason to draw those various lines.
17            THE COURT:  So in your view the issue of class
18    certification should be taken up at the end of all
19    discovery?
20            MS. LISS-RIORDAN:  Right, or near the end,
21    because under the Federal rules, the plaintiffs are
22    supposed to move at an early practicable time.  So here
23    obviously we are going to need some discovery.  It would
24    be useful if it's not at the close of discovery because,
25    given the rule of saying it should be at an early
```

1    practicable time, that if there's a need for any follow-

2    up discovery, it would be nice to have a little bit of

3    time to follow up as needed.

4              THE COURT:  All right.  Well, I'm not going to

5    bifurcate the discovery because my sense is that the

6    class issues are bound up with the issues the defendant

7    is interested in.  And I do have an obligation to

8    determine whether class certification is appropriate at

9    the earliest practicable date.  Notice would have to be

10   given to members of the class.  And, in fact, if I

11   certify a class and then the defendant prevails on

12   summary judgment, it would have preclusive effect, I

13   think, with regard to the whole class or at least people

14   who didn't opt out.

15        You may want to go back and look at a decision I

16   think I rendered in about 1987, which involves *First

17   Commodity Corporation*.  I believe I certified a class

18   where the allegations were based, in meaningful measure,

19   on oral communications from essentially a script.

20   There's probably a lot more law in the last twenty

21   years, but my memory is that I've done this before.  So

22   I'll be looking at that when this comes up on my radar

23   screen again.  The parties may want to look at it, too.

24        I think we'll go back in the lobby and work out

25   the details of the schedule.  The Court is in recess.

1          (Ends, 3:45 p.m.)

2

3              C E R T I F I C A T E

4

5

6

7

8        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

9    do hereby certify that the foregoing record is a true

10   and accurate transcription of my stenographic notes

11   before Chief Judge Mark L. Wolf, November 20, 2008, to

12   the best of my skill and ability.

13

14

15

16

17   /s/ Richard H. Romanow
     _____
18   RICHARD H. ROMANOW

19

20

21

22

23

24

25